**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARK S. MILOSCH<br>213 Baden Street<br>Silver Spring, MD  20901,<br><br>Plaintiff,<br><br>v.<br><br>ALCEE HASTINGS, in his official<br>capacity as Chairman of the<br>Commission on Security and<br>Cooperation in Europe,<br>2353 Rayburn House Office Building<br>Washington, DC  20515,<br><br>and<br><br>COMMISSION ON SECURITY AND<br>COOPERATION IN EUROPE,<br>234 Ford House Office Building<br>Washington, DC  20515,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: |

**PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING**
**ORDER AND/OR PRELIMINARY INJUNCTION AND**
**REQUEST FOR EXPEDITED HEARING**

Plaintiff Mark S. Milosch, by counsel, and pursuant to Rules 7 and 65 of the Federal

Rules of Civil Procedure and Local Civil Rules 7(a) and 65.1, respectfully requests that the Court

temporarily restrain and/or preliminarily enjoin Defendants Alcee Hastings and the Commission

on Security and Cooperation in Europe ("CSCE") from terminating Plaintiff's employment.

Defendants' actions are violation of 22 U.S.C. 3008 and Plaintiff's right to due process under the

Fifth Amendment of the U.S. Constitution.

In support of this Application, Plaintiff respectfully directs the Court's attention to the following Memorandum of Law, the accompanying Declaration of Mark S. Milosch, exhibits, and the Proposed Order submitted herewith.

## REQUEST FOR EXPEDITED HEARING

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rules 65.1(d) and 78.1, Plaintiff respectfully requests that this Court schedule a hearing on Plaintiff's Application for a Temporary Restraining Order And/Or Preliminary Injunction on or before March 29, 2007, in order to prevent Defendants' from violating Plaintiff's due process rights. As demonstrated by the accompanying Certificate of Counsel Pursuant to Fed. R. Civ. Proc. 65(b)(2) and Local R. 65.1(a), Defendants have received notice of time and making of this Application, and copies of all pleadings and papers filed, has been provided to Defendants. The circumstances compelling the filing of this Application support and justify the Request for Expedited Hearing.

## MEMORANDUM OF LAW

I.      **Factual Background.**

Defendant CSCE, also known as the "Helsinki Commission," was established by Public Law No. 94-304, 90 Stat. 661 (codified as amended at 22 U.S.C. § 3001-3009) for the purpose of monitoring and encouraging compliance with the Final Act of the Conference on Security and Cooperation in Europe, an international accord signed by participating nations in 1975 in Helsinki, Finland. Defendant CSCE is an independent agency of the U.S. Government and has no direct legislative purpose or function.

By statute, Defendant CSCE is composed of twenty-one members, including nine members of the U.S. House of Representatives, nine members of the U.S. Senate, and one

-2-

member each of the U.S. Department of State, the U.S. Department of Defense, and the U.S.

Department of Commerce.  22 U.S.C. § 3003(a).  Also by statute, the Chairman and Cochairman

of Defendant CSCE are chosen at the beginning of each new Congress by the President of the

Senate, on the recommendation of the majority leader, or by the Speaker of the House of

Representatives.  *Id.* at § 3003(b)-(d).  For even-numbered Congresses, the Chairman is selected

by the Speaker of the House of Representatives and the Cochairman is selected by the President

of the Senate, on the recommendation of the majority leader.  In odd-numbered years, the

selection process is reversed.  *Id.*

The statute establishing Defendant CSCE also establishes both a commission staff and a

personnel and administration committee composed of the Chairman, Cochairman, and the

ranking commission member from the minority party in both the House of Representatives and

the Senate.[1]  By law, "[a]ll decisions pertaining to the hiring, *firing*, and fixing of pay of

Commission staff personnel shall be by a majority vote of the personnel and administration

committee . . . ."  22 U.S.C. § 3008(b) (emphasis added); *see* Exhibit 1 (full text of statute).

By longstanding practice, the personnel and administration committee has made

employment decisions amicably, through a "notification and right to object" process.  See

Exhibit 2 (Affidavit of Mark S. Milosch ("Milosch Aff.") ¶ 5); Exhibit 3 (Letter dated February

2, 2007 from Sen. Brownback and Rep. Smith to Chairman Hastings ("Letter of February 2,

2007")); Exhibit 4 (Legal Memorandum of February 2, 2007 by Maureen T. Walsh, CSCE

General Counsel ("Walsh Memorandum")).  When an employment action is proposed, other

---

[1]    For the purposes of the rights and remedies accorded under the Congressional
Accountability Act of 1995 (2 U.S.C. §§ 1301-1438), employees of the Commission are not
within the categories of "covered employees" enumerated by statute.  2 U.S.C. § 1301(3).

members are afforded a reasonable opportunity to object.  If no objection is made, the proposed employment action proceeds.  *Id.*

In addition, Defendant CSCE has a long history of continuity of staff regardless of which party controls one or both houses of Congress.  Milosch Aff. § 6; Letter of February 2, 2007. This non-partisan continuity of staff has been recognized and valued by Defendant CSCE's members.  *Id.*  It is believed that no member of Defendant CSCE's staff has ever been fired without benefit of the statutory procedures defined in 22 U.S.C. § 3008(b).  Milosch Aff. § 6.  On one occasion in 1995, shortly after control of the U.S. House of Representatives changed hands, a proposed staff firing was abandoned in light of an objection raised by just one of the two minority party members of the personnel and administration committee, even though by law two objections are required to block a firing.  *Id.* at § 6; Letter of February 2, 2007.

Plaintiff holds a Bachelor of Arts in International Relations from Michigan State University, a Juris Doctorate from the University of Michigan Law School, a Certificate of Study from the Bologna Center of the John Hopkins University Paul H. Nitze School of Advanced International Studies, and a Doctorate of Philosophy in European History from the University of Iowa, among other academic achievements.  Milosch Aff. § 2.  Prior to 2006, Plaintiff served for three years as a Special Advisor to the Congressional-Executive Commission on China, where he focused on issues of religious freedom and population planning in China.  *Id.*  He also has worked as an Instructor of History at the University of Iowa and as an attorney in private practice. *Id.*  In addition to his impressive academic and research credentials and extensive expertise, Plaintiff is a member of the State Bar of Michigan, a published author, and speaks multiple languages, including German, Italian, French, and Romanian.  *Id.*

-4-

On approximately November 30, 2006, Plaintiff was hired to serve as counsel to Defendant CSCE.  Milosch Aff. § 7.  Plaintiff's employment was effectuated through the "notice and right to object" process of longstanding use at Defendant CSCE.  *Id.*; Walsh Memorandum. As counsel, Plaintiff's duties and responsibilities included monitoring rule of law issues and "country responsibility" for Romania, Germany, and France.  Milosch Aff. § 7.  At all relevant times, Plaintiff carried out his duties and responsibilities at Defendant CSCE competently and professionally.  *Id.*  Also at all relevant times, Plaintiff was aware of the majority-vote requirement for all decisions of the personnel and administration committee pertaining to hiring, firing, and fixing of pay of Defendant CSCE staff, the longstanding notice and right to object practice of the personnel and administration committee regarding such decisions, and Defendant CSCE's history of non-partisan continuity of staff.  Milosch Aff. § 8.

In January 2007, control of the U.S. House of Representatives changed hands.  Because the new Congress was an even-numbered Congress, the new Speaker, Nancy Pelosi, gained the authority to designate the new Chairman of Defendant CSCE.  22. U.S.C. § 3003(c).  Speaker Pelosi designated Defendant Hastings to serve as Chairman of Defendant CSCE.  Milosch Aff. ¶ 9.

As of January 2007, Defendant CSCE had a professional staff of approximately eighteen professional staff members, including Plaintiff.  *Id.*  In late January 2007, shortly after assuming the chairmanship of Defendant CSCE, Defendant Hastings began efforts to terminate the employment of at least four members of Defendant CSCE's professional staff, including Plaintiff.  *Id.* at ¶ 10; Letter of February 2, 2007.

On February 2, 2007, the incoming ranking members of the personnel and administration committee, Senator Sam Brownback and Representative Christopher H. Smith, sent a letter to Chairman Hastings objecting to the dismissal of Plaintiff and the other professional staff members.[2]  Milosch Aff. § 11; Letter of February 2, 2007.  Nonetheless, Defendant Hastings has ignored the objections of Senator Brownback and Representative Smith and proceeded with the termination of the other three professional staff members, including Plaintiff.  Milosch Aff. § 12.

On March 20, 2007, Defendant Hastings' Chief of Staff verbally notified Plaintiff that Plaintiff had been fired.  Milosch Aff. ¶ 14.  Plaintiff's congressional identification pass has not been renewed, and Plaintiff has been prevented from accessing his computer files and the Internet, effectively precluding Plaintiff from carrying out his duties and responsibilities.  *Id.*  In addition, Plaintiff also has been informed that the paperwork for removing him from the federal payroll has been submitted and is being processed.  *Id.*

## II.    Discussion.

### A.    Standard for A Temporary Restraining Order and A Preliminary Injunction.

In order to prevail on an application for a temporary restraining order or preliminary injunction, a plaintiff must demonstrate the following:  (1) a substantial likelihood of success on the merits; (2) that the plaintiff will suffer irreparable harm for which there is no adequate legal remedy absent the relief requested; (3) that the harm to the plaintiff if relief is denied outweighs any harm to the opposing party if relief is granted; and (4) that the public interest supports granting the requested relief.  *See Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738,

---

[2]    One of the professional staff members apparently agreed to resign.

746 (D.C. Cir. 1995). No single factor is dispositive. Rather, a court "must balance the strengths of the requesting party's arguments in each of the four required areas." *Id.* at 747. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Id.* Moreover, the purpose of a temporary restraining order is to "preserve the status quo for a limited period of time until the Court has the opportunity to pass on the merits of the demand for a preliminary injunction." *Barrow v. Graham*, 124 F. Supp. 2d 714, 715-16 (D.D.C. 2000).

In addition, during the initial proceedings on applications for temporary restraining orders and/or preliminary injunctive relief, a court may consider sworn declarations and other credible evidence in the record even if such evidence might not meet all of the formal requirements for admissibility at trial. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (decision on preliminary injunction may be made "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"); *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004) (same).

**B.    There Is a Substantial Likelihood That the Plaintiff Will Succeed on the Merits of this Case.**

Although Plaintiff need not demonstrate an absolute certainty of success on the merits, it is very likely that he will succeed on the merits in this matter.[3] This is because Plaintiff is being terminated from his employment in violation of his right to due process under the law.

---

[3]    S*ee Udall v. D.C. Transit System, Inc.*, 404 F.2d 1358, 1359 n.3 (D.C. Cir. 1968) ("[O]n a motion for a preliminary injunction it is not necessary and it is not appropriate to make a definitive decision on such a question [*i.e.*, the merits of the claim], but merely to reach the conclusion that there is a strong likelihood that at trial the plaintiff will prevail.") (quotation marks and citation omitted).

The Fifth Amendment to the Constitution of the United States provides that no person may be deprived of life, liberty, or property with due process of law.  To establish an actionable due process claim, the plaintiff must show that "(1) it has a protected [property] interest, (2) the government deprived it of this interest, and (3) the deprivation occurred without proper procedural protections."  *PDK Labs, Inc. v. Reno*, 134 F. Supp. 2d 24, 32 (D.D.C. 2001); *see also Beverly Enterprises, Inc. v. Herman,* 130 F. Supp. 2d 1, 17 (D.D.C. 2000) (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991)); *Soeken v. Herman*, 35 F. Supp. 2d 99, 104-05 (D.D.C. 1999).

An employee's property right in continued employment is created by "statute or other source of law."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest . . . a person . . . must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."); *see also Garrow v. Gramm*, 856 F.2d 203, 207 (D.C. Cir. 1988).  In *Loudermill*, the Supreme Court recognized the property interest of a civil servant who, under Ohio law, could only be dismissed for "misfeasance, malfeasance, or nonfeasance in office."  *Id.* at 538, 539.  The Court held that this statutory limitation on the circumstances under which the employee could be dismissed gave the employee a legitimate property right in his employment – a right protectable by the Fifth Amendment.  *Id.* at 541; *Garrow*, 856 F.2d at 206.  In other words, as explained by the D.C. Circuit, property interests in continuing employment are created "by understandings, statutes, or rules that secure certain benefits and that support claims of entitlement to those benefits."  *Garrow*, 856 F.2d at 207) (citing *Board of Regents v. Roth*, 408 U.S. at 577).

-8-

In this case, the statute creating and governing Defendant CSCE clearly sets forth that "[a]ll decisions pertaining to the hiring, firing, and fixing of pay of Commission staff personnel shall be by a majority vote of the personnel and administration committee . . . ." 22 U.S.C. 3008(b). Plaintiff thus has acquired a "protected [property] interest" in his employment as a result of the statutorily-created majority-vote requirement necessary to terminate an employee. Plaintiff's "entitlement" is further established by the long-standing notice and right to object practice of the personnel and administration committee regarding such decisions, and Defendant CSCE's history of non-partisan continuity of staff. Milosch Aff. ¶ 5; Walsh Memorandum.

Plaintiff thus has an actionable due process claim because Defendants are depriving Plaintiff of his "protected property interest," *i.e.*, termination of his employment. Milosch Aff. ¶¶ 10, 12, 14. *PDK Labs, Inc.*, 134 F. Supp. 2d at 32. Moreover, Defendants are taking this action without the proper "procedural protections" in that a majority of the personnel and administration committee has not acted, as is required under 22 U.S.C. § 3008(b). *Id.*

Because Defendants' actions plainly are contrary to law, Plaintiff will likely succeed on the merits of his claim.

**C.      Plaintiff Is Suffering Irreparable Harm as a Result of the Defendant's Willful Disregard of Plaintiff's Due Process Rights.**

Irreparable harm is an injury for which the court cannot compensate should the movant prevail. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Assoc. v. Federal Power Comm.,* 259 F.2d 921, 925 (D.C. Cir. 1958)). "[I]t is well-established that acts by Government agencies in derogation of statutory rights of the public or certain individual members of the public can constitute irreparable injury." *Gates v. Schlesinger*, 366 F.

Supp. 797, 800 (D.D.C. 1973). To obtain preliminary injunctive relief, a petitioner must show

that the threatened injury is not merely "remote and speculative." *Milk Indus. Found. v.*

*Glickman*, 949 F. Supp. 882, 897 (D.D.C. 1996).

In this case, deprivation of a fundamental constitutional right such as due process, "for

even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*,

427 U.S. 347, 373 (1976) (applied to First Amendment right of association); *Mitchell v. Cuomo*,

748 F.2d 804, 806 (2d Cir. 1984) ("when an alleged deprivation of a constitutional right is

involved, most courts hold that no further showing of irreparable injury is necessary."); 11A

Wright, Miller & Kane, Federal Practice and Procedure § 2948.1, at 161 (1995) (same); *Henry v.*

*Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960) ("The District Court has no

discretion to deny relief by preliminary injunction to a person who clearly establishes by

undisputed evidence that he is being denied a constitutional right" (citations omitted)).

In this case, as demonstrated in Section B, *supra*, Defendants are denying due process to

Plaintiff by brazenly ignoring the statutory requirement relating to the termination of an

employee. Absent injunctive relief from this Court, Plaintiff will suffer a denial of his due

process right to which he is entitled under the statute. Once this due process right is denied, it

cannot be undone. Furthermore, this harm to Plaintiff is neither remote or speculative as

Defendants are terminating Plaintiff's employment. Milosch Aff. ¶ 14. Accordingly, as a result

of Defendants' actions, Plaintiff is being irreparably harmed.

**D.    Entry of a Temporary Restraining Order and/or Preliminary Injunction Will Not Cause Harm to Other Parties.**

In contrast to Plaintiff's immediate and irreparable injury, Defendants will suffer no injury by the relief requested herein.  Indeed, Defendants can suffer no cognizable harm by an injunction that prevents them from acting in a manner contrary to law.

**E.    Entry of a Temporary Restraining Order and/or Preliminary Injunction Is in the Public's Interest.**

The public interest is served by issuance of an injunction because of the public's interest in the government following the law and preventing a violation of constitutional rights.  *Al Joudi v. Bush*, No. 05-301, 2005 U.S. Dist. LEXIS 6265, *20-21 (2005) ("the public interest undeniably is served by ensuring that [a petitioner's] constitutional rights can be adjudicated in an appropriate manner.") (citing *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("it is always in the public interest to protect the violation of a party's constitutional rights").  The public interest therefore weighs in favor of the relief requested herein.

**III.    Conclusion.**

For the foregoing reasons, Plaintiff respectfully requests that the Court temporarily restrain and/or preliminarily enjoin Defendants.

Dated: March 28, 2007                    Respectfully submitted,

                                         JUDICIAL WATCH, INC.

                                         Paul J. Orfanedes
                                         D.C. Bar No. 429716
                                         James F. Peterson
                                         D.C. Bar No. 450171
                                         Meredith L. Di Liberto
                                         D.C. Bar No. 487733
                                         Suite 500
                                         501 School Street, S.W.
                                         Washington, DC 20024
                                         (202) 646-5172

                                         Attorneys for Plaintiff

**EXHIBIT 1**



# Commission on Security and Cooperation in Europe
UNITED STATES HELSINKI COMMISSION

An independent agency of the United States Government charged with monitoring and encouraging compliance with the Helsinki Final Act and other commitments of the 55 countries participating in the Organization for Security and Cooperation in Europe (OSCE).

About the Helsinki Process

# Public Law Establishing the Commission

**Title:** Act of June 3, 1976, Public Law No. 94-304, 90 Stat. 661 (codified as amended at 22 U.S.C. 3001-3009)

### Sec. 3001. Commission on Security and Cooperation in Europe; establishment

There is established the Commission on Security and Cooperation in Europe (hereafter in this chapter referred to as the "Commission").

### Sec. 3002. Function and duties of Commission

The Commission is authorized and directed to monitor the acts of the signatories which reflect compliance with or violation of the articles of the Final Act of the Conference on Security and Cooperation in Europe, with particular regard to the provisions relating to human rights and Cooperation in Humanitarian Fields. The Commission is further authorized and directed to monitor and encourage the development of programs and activities of the United States Government and private organizations with a view toward taking advantage of the provisions of the Final Act to expand East-West economic cooperation and a greater interchange of people and ideas between East and West.

### Sec. 3003. Commission membership

(a) Selection and appointment of members

The Commission shall be composed of twenty-one members as follows:

(1) Nine Members of the House of Representatives appointed by the Speaker of the House of Representatives. Five Members shall be selected from the majority party and four Members shall be selected, after consultation with the minority leader of the House, from the minority party.

(2) Nine Members of the Senate appointed by the President of the Senate. Five Members shall be selected from the majority party of the Senate, after consultation with the majority leader, and four Members shall be selected, after consultation with the minority leader of the Senate, from the minority party.

(3) One member of the Department of State appointed by the President of the United States.

(4) One member of the Department of Defense appointed by the President of the United States.

(5) One member of the Department of Commerce appointed by the President of the United States.

(b) Commission Chairman and Cochairman

There shall be a Chairman and a Cochairman of the Commission.

(c) Designation of Chairman

At the beginning of each odd-numbered Congress, the President of the Senate, on the recommendation of the majority leader, shall designate one of the Senate Members as Chairman of the Commission. At the beginning of each even-numbered Congress, the Speaker of the House of Representatives shall designate one of the House Members as Chairman of the Commission.

(d) Designation of Cochairman

At the beginning of each odd-numbered Congress, the Speaker of the House of Representatives shall designate one of the House Members as Cochairman of the Commission. At the beginning of each even-numbered Congress, the President of the Senate, on the recommendation of the majority leader, shall designate one of the Senate Members as Cochairman of the Commission.

**Sec. 3004. Testimony of witnesses, production of evidence; issuance of subpena; administration of oaths**

In carrying out this chapter, the Commission may require, by subpena or otherwise, the attendance and testimony of such witnesses and the production of such books, records, correspondence, memorandums, papers, and documents as it deems necessary. Subpenas may be issued over the signature of the Chairman of the Commission or any member designated by him, and may be served by any person designated by the Chairman or such member. The Chairman of the Commission, or any member designated by him, may administer oaths to any witness.

**Sec. 3005. Presidential report to Congress; annual submission; contents**

In order to assist the Commission in carrying out its duties, the Secretary of State shall submit to the Commission an annual report discussing the overall United States policy objectives that are advanced through meetings of decision-making bodies of the Organization on Security and Cooperation in Europe (OSCE), the OSCE implementation review process, and other activities of the OSCE. The report shall also include a summary of specific U.S. policy objectives with respect to participating States where there is a particular concern relating to the implementation of OSCE commitments or where an OSCE presence exists. This summary shall address the role played by OSCE institutions, mechanisms, or field activities in achieving U.S. policy objectives. The report, covering the period from January 1 to December 31, shall be submitted within 90 days after the end of the reporting period. The report shall be posted on the website of the Department of State.

**Sec. 3006. Commission report to Congress; periodic reports; expenditure of appropriations**

The Commission is authorized and directed to report to the House of Representatives and the Senate with respect to the matters covered by this chapter on a periodic basis and to provide information to Members of the House and Senate as requested. For each fiscal year for which an appropriation is made the Commission shall submit to Congress a report on its expenditures under such appropriation.

**Sec. 3007. Appropriations for Commission**

(a) Authorization; disbursements

(1) There are authorized to be appropriated to the Commission for each fiscal year such sums as may be necessary to enable it to carry out its duties and functions. Appropriations to the Commission are authorized to remain available until expended.

(2) Appropriations to the Commission shall be disbursed on vouchers approved -

(A) jointly by the Chairman and the Cochairman, or

(B) by a majority of the members of the personnel and administration committee established pursuant to section 3008(a) of this title.

(b) Use of foreign currencies

For purposes of section 1754(b) of this title, the Commission shall be deemed to be a standing committee of the Congress and shall be entitled to use funds in accordance with such sections.

(c) Official reception and representational expenses

Not to exceed $6,000 of the funds appropriated to the Commission for each fiscal year may be used for official reception and representational expenses.

(d) Foreign travel for official purposes

Foreign travel for official purposes by Commission members and staff may be authorized by either the Chairman or the Cochairman.

### Sec. 3008. Commission staff

(a) Personnel and administration committee

The Commission shall have a personnel and administration committee composed of the Chairman, the Cochairman, the senior Commission member from the minority party in the House of Representatives, and the senior Commission member from the minority party in the Senate.

(b) Committee functions

All decisions pertaining to the hiring, firing, and fixing of pay of Commission staff personnel shall be by a majority vote of the personnel and administration committee, except that -

(1) the Chairman shall be entitled to appoint and fix the pay of the staff director, and the Cochairman shall be entitled to appoint and fix the pay of his senior staff person; and

(2) the Chairman and Cochairman each shall have the authority to appoint, with the approval of the personnel and administration committee, at least four professional staff members who shall be responsible to the Chairman or the Cochairman (as the case may be) who appointed them. The personnel and administration committee may appoint and fix the pay of such other staff personnel as it deems desirable.

(c) Staff appointments

All staff appointments shall be made without regard to the provisions of title 5 governing appointments in the competitive service, and without regard to the provisions of chapter 51 and subchapter III of chapter 53 of such title relating to classification and general schedule pay rates.

(d) Commission employees as congressional employees

(1) For purposes of pay and other employment benefits, rights, and privileges and for all other purposes, any employee of the Commission shall be considered to be a congressional employee as defined in section 2107 of title 5.

(2) For purposes of section 3304(c)(1) [1] of title 5, staff personnel of the Commission shall be considered as if they are in positions in which they are paid by the Secretary of the Senate or the Chief Administrative Officer of the House of Representatives.

[1] See References in Text note below.

(3) The provisions of paragraphs (1) and (2) of this subsection shall be effective as of June 3, 1976.

### Sec. 3009. Printing and binding costs

For purposes of costs relating to printing and binding, including the costs of personnel detailed from the Government Printing Office, the Commission shall be deemed to be a committee of the Congress.

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK S. MILOSCH<br>213 Baden Street<br>Silver Spring, MD 20901,<br><br>        Plaintiff,<br><br>v.<br><br>ALCEE HASTINGS, in his official<br>capacity as Chairman of the<br>Commission on Security and<br>Cooperation in Europe,<br>2353 Rayburn House Office Building<br>Washington, DC 20515,<br><br>and<br><br>COMMISSION ON SECURITY AND<br>COOPERATION IN EUROPE,<br>234 Ford House Office Building<br>Washington, DC 20515,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF MARK S. MILOSCH

I, Mark S. Milosch, being duly sworn, hereby depose and say:

1.      From approximately November 30, 2006 to present, I have been employed as counsel by the Commission on Security and Cooperation in Europe ("CSCE"), which is located at 234 Ford House Office Building, Washington DC 20515. I make this declaration based upon my personal knowledge of the contents herein.

2.      I hold a Bachelor of Arts in International Relations from Michigan State University, a Juris Doctorate from the University of Michigan Law School, a Certificate of Study from the Bologna Center of the John Hopkins University Paul H. Nitze School of Advanced International Studies, and a Doctorate of Philosophy in European History from the University of Iowa, among other academic achievements.  Prior to 2006, I served for three years as a Special Advisor to the Congressional-Executive Commission on China, where he focused on issues of religious freedom and population planning in China.  I also has worked as an Instructor of History at the University of Iowa and as an attorney in private practice.  In addition to my academic and research credentials and extensive expertise, I am a member of the State Bar of Michigan, a published author, and speak multiple languages, including German, Italian, French, and Romanian.

3.      First codified in 1976, the CSCE, also known as the "Helsinki Commission," is composed of twenty-one members, including nine members of the U.S. House of Representatives, nine members of the U.S. Senate, and one member each of the U.S. Department of State, the U.S. Department of Defense, and the U.S. Department of Commerce.  Also by statute, the Chairman and Cochairman of Defendant CSCE are chosen at the beginning of each new Congress by the President of the Senate, on the recommendation of the majority leader, or by the Speaker of the House of Representatives.  For even-numbered Congresses, the Chairman is selected by the Speaker of the House of Representatives and the Cochairman is selected by the President of the Senate, on the recommendation of the majority leader.  In odd-numbered years, the selection process is reversed.

4.      The CSCR statute, 22 U.S.C. § 3001 *et seq.*, also establishes both a commission staff and a personnel and administration committee composed of the Chairman, Cochairman, and the rankingr commission member from the minority party in both the House of Representatives and the Senate.  By law, "[a]ll decisions pertaining to the hiring, *firing*, and fixing of pay of Commission staff personnel shall be by a majority vote of the personnel and administration committee . . . ." 22 U.S.C. § 3008(b) (emphasis added).

5.      It is my understanding that the longstanding practice was that the personnel and administration committee made employment decisions amicably, through a "notification and right to object" process.  When an employment action is proposed, other members are afforded a reasonable opportunity to object.  If no objection is made, the proposed employment action proceeds.

6.      In addition, I understand that CSCE has a long history of continuity of staff regardless of which party controls one or both houses of Congress.  This non-partisan continuity of staff has been recognized and valued by CSCE's members.  In fact, to my knowledge, no member of CSCE's staff has ever been fired without benefit of the statutory procedures defined in 22 U.S.C. § 3008(b).  In fact, I understand that on one occasion in 1995, shortly after control of the U.S. House of Representatives changed hands, a proposed staff firing was abandoned in light of an objection raised by just one of the two minority party members of the personnel and administration committee, even though by law two objections are required to block a firing.

7.      In November 2006, I was hired to serve as counsel to CSCE.  My employment was effectuated through the "notice and right to object" process of longstanding use at CSCE.

As counsel, my duties and responsibilities have included monitoring rule of law issues and "country responsibility" for Romania, Germany, and France.

8.    At all relevant times, I have carried out my duties and responsibilities at CSCE competently and professionally.  Also at all relevant times, I was aware of, and relied on, the majority-vote requirement for all decisions of the personnel and administration committee pertaining to hiring, firing, and fixing of pay of CSCE staff, the longstanding notice and right to object practice of the personnel and administration regarding such decisions, and CSCE's history of non-partisan continuity of staff.

9.    In January 2007, control of the U.S. House of Representatives changed hands. Because the new Congress was an even-numbered Congress, the new Speaker, Nancy Pelosi, gained the authority to designate the new Chairman of CSCE.  Speaker Pelosi designated Representative Alcee Hastings to serve as Chairman of CSCE.  As of January 2007, CSCE had a professional staff of approximately eighteen professional staff members, including myself.

10.    In late January, 2007, shortly after assuming the chairmanship of CSCE, Chairman Hastings began efforts to terminate the employment of at least four members of CSCE's professional staff, including myself.

11.    On February 2, 2007, the two incoming ranking members of the personnel and administration committee, Senator Sam Brownback and Representative Christopher H. Smith, sent a letter to Chairman Hastings objecting to my dismissal and the dismissal of the other professional staff members.  It is my understanding that one of the professional staff members agreed to resign.

12.    Nonetheless, Chairman Hastings has ignored the objections of Senator Brownback

and Representative Smith and proceeded with the termination of the other three professional staff members, including myself.

13.     On March 20, 2007, Chairman Hastings' Chief of Staff verbally notified me that I had been fired.  My congressional identification pass has not been renewed, and I have been prevented from accessing my computer and the Internet, effectively precluding me from carrying out my duties and responsibilities.  In addition, I also have been informed that the paperwork for removing me from the federal payroll has been submitted and is being processed.

I declare under penalty of law that the foregoing is true and correct.  Executed on March 28, 2007 in the District of Columbia.

_____
Mark S. Milosch

**EXHIBIT 3**

# Congress of the United States
## Washington, DC 20515

February 2, 2007

Rep. Alcee Hastings, Chairman
2353 Rayburn House Office Building
Washington, DC 20515

Dear Chairman Hastings:

Pursuant to the statutory provisions governing the Commission on Security and Cooperation in Europe—the Helsinki Commission (PL 94-304), we write to object to the dismissal of Knox Thames, Mark Milosch, J.R. Sanchez and Chad Gore.  We understand that Mr. Gore has since agreed to leave and that is his prerogative.

The Helsinki Commission has earned its strong, worldwide reputation as a leader in advancing the rule of law and the promotion of human rights and labor rights in part because of the experience, the expertise and the diligent work of the professional staff.  The intention to ignore the provisions of 22 U.S.C. 3008(b) and fire professional staff members without notifying and providing an opportunity to object to the personnel and administration committee—including the Ranking Members of that committee—is in violation of both the spirit and letter of the law establishing the Commission.  The firings are illegal and simply cannot stand.  Protecting the rule of law, human rights and labor rights must begin at home and we will fight for the rights of Commission employees as aggressively as we have for those in Poland, Romania, Belarus, and Russia, just to name a few.

Those you seek to fire are highly-skilled professionals who deserve the full protection of the law.  Mr. Thames has faithfully served the Commission for more than five years, providing thorough research, creative approaches and timely responses to crises in the region.  Mr. Milosch has come to the Commission with impressive academic and research credentials, multiple language skills and extensive expertise.  Mr. Sanchez has relevant legal experience which strongly complements the composition of the Commission staff, as well as language skills.

Certainly one of the characteristics of the Commission which has been valued and duly recognized is the non-partisan continuity of staff.  The Commissioners are well served by this professional perspective.

The personnel and administration committee—specifically created in law to deal with "hiring, firing and fixing of pay of Commission staff personnel"—has worked amicably and effectively through the long-standing practice of notification and right to object process.  As you know, other current members of the staff, hired under this same notification and right to object

Rep. Alcee Hastings
February 2, 2007
Page Two

process, are being retained.  Beyond this, in compliance with Section 3008, a staff firing that was sought at the beginning of the Republican majority in 1995 was abandoned in light of an objection raised by just one of the two Ranking Members, then-Ranking Member Rep. Steny Hoyer.  Mr. Hoyer was notified; he objected; and the Chair and Co-Chair retained the individual on staff (although under the law it takes two objections to block a firing).  That individual remained as an integral part of the Commission's staff with his full portfolio left intact.

In response to our objection, we expect that these individuals will remain on staff and will continue with full portfolios.

Each of us has served as Chairman of this noble institution and has respected the non-partisan status of the professional staff members.  The mandate of the Commission to monitor compliance of OSCE States to the commitments each has made has been the focus and priority, not only of our leadership but also that of previous Chairmen and Co-Chairmen.  Anticipating our continued active participation in the work of the Commission as Ranking Members, we are eager to ensure that the staff is qualified, respected, and in a position to advance the mandate given to the Commission from its genesis.

Sincerely,

Sam Brownback, U.S.S.

Christopher H. Smith, M.C.

cc:  Benjamin L. Cardin, U.S.S.

**EXHIBIT 4**

# MEMO

| To: | Fred Turner, Chief of Staff, CSCE |
|---|---|
| Fr: | Maureen T. Walsh, General Counsel, CSCE |
| Dt: | February 2, 2007 |
| Re: | Implementation of 22 U.S.C. Section 3008 "Majority Vote" Provision |

**Question Presented and Brief Conclusion:**

You have asked whether the Helsinki Commission's enabling statute, specifically 22 U.S.C. section 3008(b), was violated by the manner in which hiring decisions were approved at the Commission between, at a minimum, January 1995 and December 2006. During this time, when the Chairman wanted to hire a new employee the procedure followed was to provide a written notice to the Co-Chairman, and ranking members (who collectively compose the personnel and administration committee), informing them of the intention to hire, and requesting that any objections to the proposed personnel action be made prior to a date indicated in the memo (hereinafter "notice and right to object procedure"). If no objection was received, the hiring was deemed to have been approved the committee.

From the analysis below, I find no reason to believe that the "notice and right to object procedure," in use for twenty-two years, was inconsistent with the statute. Going forward, the Chairman can review the procedure used to obtain a majority vote if he so desires.

**Analysis:**

Section 3008 of the Commission's statute states, in pertinent part, as follows:

(a) Personnel and administration committee

The Commission shall have a personnel and administration committee composed of the Chairman, the Cochairman, the senior Commission member from the minority party in the House of Representatives, and the senior Commission member from the minority party in the Senate.

(b) Committee functions

**All decisions pertaining to the hiring, firing, and fixing of pay of Commission staff personnel shall be by a majority vote of the personnel and administration committee,** except that -

(1) the Chairman shall be entitled to appoint and fix the pay of the staff director, and the Cochairman shall be entitled to appoint and fix the pay of his senior staff person; and

(2) the Chairman and Cochairman each shall have the authority to appoint, with the approval of the personnel and administration committee, at least four

professional staff members who shall be responsible to the Chairman or the Cochairman (as the case may be) who appointed them. The personnel and administration committee may appoint and fix the pay of such other staff personnel as it deems desirable.

According to Michael Hathaway, former Staff Director and General Counsel to the Commission (1985-1987, 1995-1999), the process of notification with a right to object has been the Commission's standard practice since Sec. 3008 was added to the Commission's statute in 1985. Mr. Hathaway informed me that in 1985, then-Chairman Senator D'Amato and then-Co-Chairman Steny Hoyer personally worked out the written notice and right to object procedure. In 1985, Mr. Hathaway created the notification template that was in use through 2006 except that he was not aware if the Chairmen between 1987 and 1994 used the same notification memo. I have not had an opportunity to examine the personnel files of individuals hired during that time to verify whether a memo exists. Mr. Hathaway stated that during his tenure no one (staff or Commissioner) ever objected to the use of this procedure or raised any question about it.

The Commission's statute is silent as to procedure. Since no court has interpreted the "majority vote" provision of the Commission's statute, the Commission can decide for itself how to fulfill the requirement. For most, perhaps all, of the past 22 years, the Commission's Chairmen have chosen to implement the requirement by use of a notice and right to object procedure. The procedure is a longstanding practice of the Commission to which there has been no objection until, allegedly, very recently. The notice and right to object procedure is not on its face an invalid procedure and, indeed, would seem to be a reasonable means to satisfy the "majority vote" requirement so long as a reasonable amount of notice is given of the pending personnel action and a reasonable amount of time allowed for objections to be made. It is also a rational means by which to make personnel decisions in order to keep the Commission functioning given the difficulties that would arise if the personnel and administration committee actually needed to be convened in order for a vote to be taken.

While the Chairman may choose to use a different voting procedure going forward, there are no legal grounds to deem the notice and right to object procedure invalid.

Commission employees are at-will employees who can be dismissed from their jobs by the Chairman for any non-discriminatory reason or for no reason. This authority is constrained, however, by the Commission's statute which requires the Chairman to seek the approval of a majority of the members of personnel and administration committee prior to exercising his authority. To terminate an employee, or request resignation in lieu of termination, on the grounds that a voting procedure was violated would likely be viewed by a court as pretextual and would impose an undue hardship on those individuals. Such a scenario could make the Commission and Chairman vulnerable to having a grievance or lawsuit filed against them.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARK S. MILOSCH                           )
213 Baden Street                          )
Silver Spring, MD 20901,                  )
                                          )
              Plaintiff,                   )        Civil Action No.
                                          )
v.                                        )
                                          )
ALCEE HASTINGS, in his official           )
capacity as Chairman of the               )
Commission on Security and                )
Cooperation in Europe,                    )
2353 Rayburn House Office Building         )
Washington, DC 20515,                     )
                                          )
and                                       )
                                          )
COMMISSION ON SECURITY AND                )
COOPERATION IN EUROPE,                    )
234 Ford House Office Building             )
Washington, DC 20515,                     )
                                          )
              Defendants.                  )
_____   )

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Motion for a Temporary Restraining Order and a

Preliminary Injunction, and the entire record herein, it is on this ____ day of March, 2007,

**ORDERED** that for a period of ten (10) days from the issuance of this Order, good cause

having been shown pursuant to Rule 65 of the Federal Rules of Civil Procedure that immediate

and irreparable injury and harm will result to Plaintiff before the Motion for a Preliminary

Injunction can be heard and decided, that Plaintiff's Motion for a Temporary Restraining Order is

**GRANTED**; and it is

**FURTHER ORDERED** that Defendants Chairman Alcee Hastings and Commission of

Security and Cooperation in Europe, their agents, servants, employees, successors and assigns, and all those in active concert or participation with them be and hereby are, for a period of ten (10) days from the entry of this Order, enjoined and restrained from terminating Plaintiff's employment, and it is

**FURTHER ORDERED** that Defendants' answering papers, if any, in opposition to Plaintiff's Motion for Preliminary Injunction shall be filed and served via the Court's electronic case filing system no later than five (5) days from the issuance of this Order, and Plaintiff's reply papers, if any, shall be filed and served via the Court's electronic case filing system no later than eight (8) days from the issuance of this Order; and it is

**FURTHER ORDERED** that a hearing will be held by this Court on March, ___, 2007, in Courtroom _____, at ___:__ __, at which time Defendants are required to show cause why a preliminary injunction should not issue.

**SO ORDERED.**

_____
U.S. District Court Judge

Date:   March ___, 2007